UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:19-cr-00183-TWP-DML-1 |
| ARTHUR MILES, | ) ) ) |
| Defendant. | ) |

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

This matter is before the Court on Defendant Arthur Miles' ("Miles") Motion to Quash Search Warrant and Suppress Evidence (Filing No. 131). Miles is charged by Superseding Indictment with Count 1: Possession with Intent to Distribute Methamphetamine, Count 2: Possession with Intent to Distribute Cocaine, Counts 3 and 4: Felon in Possession of a Firearm and Count 5: Distribution of Methamphetamine (Filing No. 65). He requests that the Court quash the search warrant issued for the property and premises located on Brouse Avenue in Indianapolis, Indiana (the "Residence") and suppress all evidence recovered pursuant to that warrant due to the search warrant affidavit lacking probable cause and violating his Fourth Amendment rights. For the following reasons, the Motion is **denied**.

## I. FINDINGS OF FACT

The facts in this case not disputed by the parties and neither has requested a hearing.[1] Law enforcement received a tip from a cooperating source ("CS") alleging they could obtain methamphetamine from Christopher Deeren ("Deeren") (Filing No. 131 at 2). Law enforcement then used the CS to conduct two controlled buys from Deeren. During each controlled purchase,

---

[1] A hearing is not necessary on a motion to suppress unless " there are disputed issues of material fact which will affect the outcome of the motion.'" *United States v. Juarez*, 454 F.3d 717, 719–20 (7th Cir. 2006)

control measures were used. Prior to each purchase an undercover officer's vehicle was searched and the CS was searched to ensure that the CS possessed no contraband other than that provided by Deeren. ([Filing No. 131-1 at 13](#)). The CS was fitted with audio and video recording equipment prior to each controlled purchase so that law enforcement could listen to and view the transaction. *Id*. Law enforcement officers also physically observed the undercover officer drive the CS directly to and from the Residence for both purchases to assure that the CS did not meet with other person. *Id*. at 13-14.

During the controlled buys, the CS would meet Deeren at a specified location, and then Deeren would take the CS to the Residence. *Id.* at 2–3. During these controlled buys, a third unidentified individual was also present. *Id.* On each occasion, when the CS and Deeren arrived at the Residence, Deeren would enter the Residence, return to the vehicle, and provide illegal drugs to the CS. *Id.* at 3. On April 29, 2019, following the second controlled buy, Drug Enforcement Agency Task Force Officer Clifton S. Jones ("TFO Jones") proceeded to file an application for a search warrant for the Residence ([Filing No. 131 at 3](#)). Law enforcement set up a third and final controlled buy to encourage Deeren to travel to the Residence ([Filing No. 135 at 5](#)). The CS met with Deeren at a gas station, and the two drove together to the Residence. *Id.* Upon arriving at the Residence, Deeren exited the vehicle and met with Cleo Brandberry ("Brandberry") and Arthur Miles ("Miles") on the front porch. *Id.* Deeren, Miles, and Brandberry were taken into custody, and the federal search warrant was executed on the Residence. *Id.*

Upon execution of the search warrant, documents identifying Miles were found within the Residence. *Id.* At the Residence, law enforcement also found a DVR connected to surveillance

cameras, methamphetamine, over 100 grams of cocaine, a scale, $10,000.00, a kilo press,[2] and rifles. *Id.* Law enforcement also found cocaine and methamphetamine in a vehicle located at the premises of the Residence. *Id.*

Miles and Deeren were charged by a Complaint and Affidavit on May 2, 2019 (Filing No. 2). Miles was Indicted on May 21, 2019, and that same date a Notification of Assigned Judge, Automatic Not Guilty Plea, Trial Date, Discovery Order and Other Matters document ("Notification document") was filed, ordering that all motions, including motions to suppress, be filed within thirty days of the appearance of counsel (Filing No. 29 at 9). Counsel for Miles entered his appearance on July 8, 2019 (Filing No. 48). On May 28, 2019, the Court issued an Order Setting Final Pretrial, Trial, and Pretrial Filing Deadlines, ordering that pretrial motions pursuant to Federal Rule of Criminal Procedure 12(b)(3)—which includes motions to suppress—be filed two weeks before the final pretrial (Filing No. 36 at 1). At the time of the filing of the Motion to Suppress, the final pretrial conference was set for July 7, 2021 (Filing No. 125). Miles filed his Motion to Suppress on May 6, 2021 (Filing No. 131).

## II.  CONCLUSIONS OF LAW

Probable cause exists when, "based on the totality of the circumstances, the affidavit sets forth evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. McMillian*, 786 F. 3d 630, 639 (7th Cir. 2015). The Fourth Amendment also requires a search or seizure to be reasonable under the circumstances. U.S. Const. Amend. IV. Furthermore, "when an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit."

---

[2] A "kilo press" is "a device used to package large quantities of drugs." *United States v. Babilonia*, 854 F.3d 163, 171 (2d Cir. 2017).

3

*Id.* When a search warrant is authorized, "deference is owed to the issuing judge's conclusion that there is probable cause." *U.S. v. Sutton*, 742 F.3d 770, 773 (7th Cir. 2014). The burden is on the defendant to show the warrant is invalid. *United States v. Childs*, 447 F.3d 541, 546 (7th Cir. 2006).

The exclusionary rule forbids the use of evidence obtained by police officers in violation of the Fourth Amendment. *United States v. Winn*, 79 F. Supp. 3d 904, 912 (7th Cir. 2015). Moreover, "fruits of a search based on an invalid warrant may be admitted at trial if the executing officer relied on the invalid warrant in good faith." *United States v. Orozco*, 576 F.3d 745, 750 (7th Cir. 2009) (citing *United States v. Leon*, 468 U.S. 897, 922 (1984)). The good faith exception to the exclusionary rule also allows courts to enter evidence when a police officer relies in objective good faith on a faulty but facially valid search warrant. *Leon*, 468 U.S. at 926. *Prima facie* evidence that an officer was acting in good faith is the officer's decision to obtain a warrant. *Orozco*, 576 F. 3d at 750 (citing *United States v. Mykytiuk,* 402 F. 3d 773, 777 (7th Cir. 2005)). This presumption can be rebutted only if the defendant shows that "(1) the issuing judge abandoned his role as a neutral and detached arbiter; (2) the officers were reckless or dishonest in preparing the supporting affidavit; or (3) the affidavit was so lacking in probable cause that no officer could have reasonably relied on it. *Id*. (citing *Mykytiuk*, 402 F.3d at 777).

### III. DISCUSSION

Miles challenges probable cause for the search warrant, contending that the affidavit which led to the search warrant being issued was based on insufficient evidence. In response, the Government first argues that the Motion is untimely, and if deemed timely, it should be denied

4

because the search warrant was supported by probable cause. The Court will address each contention in turn.

A. **Timeliness of Motion to Suppress**

The Government first argues that the Court should not reach the merits of Miles' Motion to Suppress because of its untimeliness ([Filing No. 135 at 6](#)). Miles was initially indicted on May 21, 2019. And the Notification document was issued that same date. ([Filing No. 29](#)). The Notification document states that pretrial motions, including motions to suppress evidence, be filed within thirty days after the appearance of counsel. *Id*. at 9. Because Miles counsel entered an appearance on July 8, 2019, the Government contends Miles's motion is therefore untimely—by almost a year. The Government cites *United States v. Combs*, which states that if a defendant wants to file a motion to suppress, they must do so "according to the deadlines set by the district court." *Id.* (quoting 657 F.3d 565, 568 (7th Cir. 2011) (citing Fed. R. Crim. P. 12(b)(3)(C))).

Miles points out that the Court also entered an Order Setting Final Pretrial, Trial and Pretrial Filing Deadlines on May 28, 2019, ([Filing No. 36](#) ), which set the date for the filing of motions pursuant to Fed. R. Crim. P. 12(b)(3), two weeks prior to the final pretrial conference. *Id*. At the time when he filed his suppression motion, the final pretrial conference was set for July 7, 2021, at 4:00 p.m. ([Filing No. 133](#)),  thus, his motion is timely. *Id.*

The Court recognizes that there has been a conflict on the docket concerning the filing of certain motions, including a motion to suppress. The Court has corrected that error and all future scheduling orders will state that the deadlines in the Order Setting Final Pretrial, Trial and Pretrial Filing Deadlines control. The Court agrees with Miles that the Motion to Suppress was timely filed. For scheduling purposes, the Order (filed May 28, 2019) controls over the earlier-filed Notification document (filed May 21, 2019). The final pretrial conference at the time of the filing

5

was scheduled for July 7, 2021 (Filing No. 133). Because the Motion to Suppress was filed well-over two weeks before that final pretrial conference (on May 6, 2021), it is timely, and the Court will proceed to consider its merits.

**B.     Search Warrant Affidavit and Probable Cause**

When reviewing the validity of a search warrant affidavit, the Court should consider the cooperating source's "veracity," "reliability," and "basis of knowledge." *Illinois v. Gates*, 462 U.S. 213, 230 (1983). That does not mean, however, that these factors should be viewed as "independent requirements to be rigidly exacted in every case." *Id*. Instead, the United States Supreme Court has held that "they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question that contraband or evidence is located in a particular place." *Id.* (emphasis omitted).

Miles argues that the search warrant affidavit did not contain probable cause because it was based on an uncorroborated CS's tip and two "controlled" buys that involved unknown persons who were not searched (Filing No. 131 at 1). He asserts that law enforcement lacked control of the buys because a third party conducted the drug buys, not the CS. *Id.* at 5. Because the CS did not see or hear Miles sell the drugs inside the Residence, Miles contends that the controlled buys were defective, and therefore, probable cause was not established. *Id.* (citing *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006)).

Miles further argues that the controlled buys were not reliable indicators that drugs were being sold from the Residence. *Id.* at 6. He contends that his case differs from *United States v. Bacon*, ___ F.3d ___ at *1 (7th Cir. March 22, 2021), where "the controlled buys were unique in that there was a second layer of separation between the officers and the defendant." *Id.* at 7 (citing *Bacon*, 991 F.3d at 835). This second layer of separation is called an "unwitting informant" and

6

"the use of an unwitting informant introduces an additional layer of uncertainty to the transaction because it leaves open the possibility that the narcotics were acquired not at the suspect residence but at the location where the confidential and unwitting informants met before and after the transaction." *Id.* at 8 (citing to *Bacon*, 991 F.3d at 837 (quoting *United States v. Artez*, 389 F.3d 1106, 1112 (10th Cir. 2004))). Miles contends the Seventh Circuit has recognized that the concerns that come with government informants do not apply to unwitting informants because they have not been promised anything by law enforcement. *Id.* (citing *Bacon*, 991 F.3d at 837). The unwitting informant in *Bacon* told the cooperating source of what was found inside the residence and that he obtained the drugs from inside the residence. *Id.* at 9.

Miles contends there is a crucial distinction between his case and *Bacon* because here, the CS used by law enforcement was never told by the "unwitting informant" that the drugs came from the Residence or that anything illegal was happening inside the Residence. *Id*. He argues that simply seeing someone exit a residence is not enough to lead a reasonable person to believe that that there are drugs inside the premises. *Id.* at 11 (citing *State v. Vance*, 119 N.E. 3d 626, 631 (Ind. Ct. App. 2019) (quoting *Esquerdo v. State*, 640 N.E. 2d 1023, 1029 (Ind. 1994))). Just because the CS saw Deeren come from the Residence during the "controlled" buys, Miles argues, does not mean that the drugs came from within the Residence. *Id.* at 12. Miles concludes that "drug dealers . . . may intentionally visit locations unrelated to their criminal activities to mislead the police." *Id.* at 13.

The Government responds that the search warrant affidavit contained probable cause (Filing No. 135 at 7). The Government points out that an affidavit must only show "a fair probability, given the totality of the circumstances, that evidence of a crime will be found in a

particular place." *Orozco*, 576 F.3d at 748. The Government argues that Miles has not met the burden showing that the warrant is invalid ([Filing No. 135 at 7](Filing No. 135 at 7)).

Here, law enforcement and the Magistrate Judge both reasonably determined that there was probable cause to believe that there would be drugs or evidence at the Residence because "Deeren transported the CS, his customer, to 3243 Brouse Ave. during each controlled buy, received money from the CS at the location, and entered the residence before returning to the vehicle to provide the CS with methamphetamine". *Id.* The Government further argues that this case differs from *Bacon*, in that the transactions there happened inside an apartment and the defendant was the actual target of the investigation. *Id.* Here, Deeren was the target and took the CS to the Residence during the controlled buys. *Id.* at 9. To further support its argument, the Government relies on *United States v. Yarber*, where a search warrant issued to search the apartment of the defendant's girlfriend because the defendant drove there immediately after two controlled buys, was deemed valid. *Id.* (citing 915 F.3d 1103, 1105 (7th Cir. 2019)). The Government argues, the evidence here is stronger than that in *Yarber* because "Deeren . . . took the CS to the residence, went inside the residence, and then came outside and provided the CS with methamphetamine." *Id.* Lastly, the Government states that Miles' argument that the drugs could have come from the other individuals is pure speculation. *Id.* at 10.

In his reply, Miles focuses on the importance of the Fourth Amendment and the protection of homes: "[d]espite the erosion of the Fourth Amendment's protections in other places . . . the home retains a special place in search and seizure law, and continues to symbolize a zone of privacy often beyond the reach of the state." ([Filing No. 136 at 2](Filing No. 136 at 2).) He argues that the fact that there were unidentified individuals during the controlled buys, that the CS did not enter the Residence, and that the CS did not see Deeren obtain the drugs from inside the Residence proves

there was no probable cause. *Id.* Miles asserts that the Fourth Amendment requires more than what the Government provided in the affidavit. *Id.* at 4.

Miles argues that the Government's reliance on *Yarber* is misplaced. In *Yarber*, the defendant visited the residence after the controlled buy—not during or before. *Id.* Miles goes on to argue that "it seems more likely that a dealer would visit the stash house/safe house **after** a controlled buy because he no longer has drugs on him and now has the drug proceeds to score more drugs to sell." *Id.* at 5 (emphasis in original). Another key distinction Miles notes is the additional surveillance that was conducted in *Yarbe*r. Here, law enforcement did not follow Deeren after either controlled buy, and when additional surveillance was conducted at the Residence, Deeren was not there. *Id.*

Probable cause is a "flexible, common-sense standard. *Gates*, 462 U.S. at 239. Based on the totality-of-the-circumstance's standard set out by *Gates*, the Court agrees with the Government: probable cause in the search warrant affidavit supported the issuing of a search warrant. Miles' reliance on *Bacon* in support of his Motion to Suppress is misplaced. During the controlled buys in *Bacon*, a third party—or "unwitting informant"—acted as a middleman between the cooperating source and Bacon. 991 F.3d at 837. Based on the tips from the cooperating source and the controlled buys, law enforcement applied for a search warrant, which was granted. *Id*. Bacon was convicted and, on appeal, argued that the district court should have granted his motion to suppress because the controlled buys were not controlled due to the presence of the "unwitting informant". The Seventh Circuit affirmed the district court's decision, holding that the middleman had no reason to lie because the middlemen did not know a controlled buy was happening. *Id.* at 840–41. Here, because the investigation was focused on Deeren, not Miles, Miles' argument that Deeren was an "unwitting middleman" is unavailing. The Government points out that, like in *Bacon*, law

enforcement here recorded and conducted surveillance during the controlled buys; they heard the CS give Deeren the money; and saw Deeren enter and exit the Residence and give the drugs to the CS on two separate occasions. Those actions constitute a substantial basis that would make a reasonable person believe that contraband or evidence may be found within the Residence. *See Yarber*, 915 F.3d at 1105 (holding that a "substantial basis" for concluding that "a search would uncover evidence of wrongdoing" is enough to establish probable cause.).

The Government's reliance on *Yarber*, however, is more fitting. In *Yarber*, the defendant appealed the district court's decision denying his motion to suppress—claiming that the search warrant affidavit did not contain probable cause—because the government failed to establish a "nexus between the drug dealing activities and the [searched] apartment." 915 F.3d at 1104. The Seventh Circuit disagreed, concluding that probable cause existed because "the search warrant expressly authorized a search for the proceeds of drug sales, Yarber went directly to this girlfriend's apartment after of the controlled buys, and additional surveillance tied Yarber to this girlfriend's apartment and car." *Id.* at 1106. Here, the affidavit relied on a CS's tip, two controlled buys, and law enforcement surveillance that showed Deeren enter and exit the Residence during the controlled buys. Miles argues that entering and exiting the Residence *during* the controlled buys is not the same as traveling to a residence *after* the controlled buys. The Court finds this argument unavailing. Deeren chose the meeting location and then transported the CS to the Residence on two different occasions during the controlled buys. After entering and exiting the Residence, Deeren would provide the CS with methamphetamine. Those facts would make a reasonable person believe that drugs would be found in the Residence. Considering these facts, the Court finds that the search warrant affidavit did not lack probable cause, which suffices to deny Miles' Motion to Suppress.

## C. The Good Faith Exception

Even if the Court found that probable cause did not exist, the good faith exception to the exclusionary rule applies. The good faith exception allows courts to enter evidence when a police officer relies in objective good faith on a faulty but facially valid search warrant. *Leon*, 468 U.S. at 926. *Prima facie* evidence that an officer was acting in good faith is the officer's decision to obtain a warrant. *Orozco*, 576 F. 3d at 750 (citing *Mykytiuk,* 402 F. 3d at 777).

Miles asserts that the good faith exception does not apply because the "judicial officer completely abandoned her detached and neutral role." ([Filing No. 131 at 13](#).) This argument is based on Miles' assertion that the judicial officer did not check the CS's credibility. *Id.* at 14. Miles contends that "a police officer's assertion that an informant provided reliable information in the past is considered an unsupported conclusion that the Seventh Circuit will treat as information obtained from an informant of unknown reliability." *Id.* (citing *United States v. Koerth*, 312 F.3d 862, 867 (7th Cir. 2002)). Miles contends that TFO Jones did not mention the past CS's reliability. *Id.* Rather, the TFO went straight to scheduling the controlled buys without corroborating the tip. *Id.* In conclusion, Miles argues that the judicial officer looked over the fact that there was an "unwitting informant" and a third unidentified individual during the controlled buys. *Id.* at 15.

In support of their argument that even if the search warrant did not contain probable cause, the good faith exception applies, the Government cites *Davis v. United States*, noting that "[e]xclusion is a 'bitter pill' used 'only as a last resort.'" ([Filing No. 135 at 10](#).) (quoting 564 U.S 229, 237 (2011) (citing *Hudson v. Michigan*, 547 U.S. 586, 591 (2006))). The Government argues that Miles failed to rebut the presumption that the officer was not acting in good faith. *Id.* at 11. In addition, Miles omits important details: the CS had controlled telephone conversations with Deeren, Deeren chose the meeting spot, and Deeren met with the CS in the presence of an

undercover officer. *Id*. Lastly, the Government argues that there was no misconduct because the CS was fitted with recording equipment and surveillance was done during the controlled buys.

The Court agrees that Miles has failed to rebut the presumption that the officer was acting in good faith and failed to show that the judicial officer abandoned her detached and neutral role. *See Mykytiuk*, 402 F.3d at 777 (listing several ways in which a defendant can refute the presumption of good faith). In *Mykytiuk*, the court applied the good faith exception because it did "not have the type of evidence that has been found so wanting in the past—uncorroborated, conclusory assertions from unproven informants." *Id.* Like in *Mykytiuk*, where officers already knew some information regarding illegal activity that corroborated the cooperating source's statement, law enforcement and the judicial officer here relied on more than just a statement from a cooperating source. *Id.* Law enforcement conducted controlled telephone conversations and text messages with Deeren prior to applying for a search warrant for the Residence. Because there was no misconduct and the search warrant was based on a corroborated CS's tip and two controlled buys with the same individual and the same Residence, the good faith exception would apply even absent probable cause.

## IV. CONCLUSION

The Court agrees with Miles' assertion that "the home is a man's sanctuary and should be afforded heightened protections against unlawful search and seizure". ([Filing No. 136 at 6](Filing No. 136 at 6).) However here, the Magistrate judge appropriately determined probable cause for the search warrant and the good faith exception also applied. For the reasons explained above, the Court **DENIES** Miles' Motion to Quash Search Warrant and Suppress Evidence, ([Filing No. 131](Filing No. 131)).

**SO ORDERED.**

Date: 6/28/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Finis Tatum, IV
TATUM LAW GROUP, LLC
ftatum@tlgindy.com

Pamela S. Domash
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
pamela.domash@usdoj.gov