# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cr-00183-TWP-DML |
| | ) | |
| ARTHUR MILES, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON DEFENDANT'S MOTION TO COMPEL

This matter is before the Court on Defendant Arthur Miles' ("Miles") Motion to Compel Disclosure of Cooperating Source Identity and Location (Filing No. 159). The Government filed a response in opposition to the Motion at Filing No. 167. The Superseding Indictment charges Miles with Count 1: Possession with Intent to Distribute Methamphetamine; Count 2: Possession with Intent to Distribute Cocaine; and Counts 3 and 4: Felon in Possession of a Firearm, and his co-defendant, Christopher Deeren ("Deeren") is charged with Count 5: Distribution of Methamphetamine. (Filing No. 65.) Miles asks the Court to compel the Government to "disclose the identity and location of all confidential informants and witnesses relied upon or otherwise employed by the government or any of its agents in the investigation and prosecution of Miles." (Filing No. 159 at 1.) For the following reasons, the Motion is **denied in part and taken under advisement in part.** It is denied as to the disclosure of identity and location of *all* confidential informants and witnesses relied upon or otherwise employed by the government or any of its agents in the investigation and prosecution of Miles. It is taken under advisement as to the cooperating source present on May 1, 2019.

## I.    **BACKGROUND**

In February 2019, investigators learned from a documented Indianapolis Metropolitan Police Department and Drug Enforcement Administration Cooperating Source ("CS") that he/she could purchase methamphetamine from a white male that the CS knew to be Christopher Deeren. (Filing No. 2 at 4.)   On February 26 and April 17, 2019, two controlled purchases of Methamphetamine were made between Deeren and the CS.  *Id.* at 6.  Based upon tips from the CS, a search warrant was issued on April 29, 2019, for the property and premises located between 3249 and 3239 Brouse Avenue, believed to be 3243 Brouse Avenue, in Indianapolis, Indiana (the "Residence").

On April 30, 2019, the CS contacted Deeren to arrange a third controlled purchase, and Deeren agreed to meet the CS at a gas station the next day.  On May 1, 2019, Task Force Officer Clifton Jones ("Officer Jones") provided the CS with $1,200.00 of official authorized funds ("OAF") and fitted the CS with audio and video equipment in preparation for the meeting with Deeren.  Officer Jones searched the CS with negative results, and at 12:58 p.m. on May 1, 2019, the CS and Deeren met at the gas station as planned.  At Deeren's request, the CS went into the gas station unattended to purchase cigarettes before driving to the Residence.  (Filing No. 159 at 1-2.)  Reports of the investigation do not indicate whether the CS was monitored while in the gas station and who the CS encountered while inside the gas station.  After the CS exited the gas station, Deeren and the CS drove away.

When Deeren and the CS arrived at the Residence, Deeren exited the vehicle, and the CS remained inside the vehicle. When Deeren reached the porch of the Residence he met and interacted with Miles.  Another individual, Cleo Grandberry ("Grandberry") was attempting to leave the front porch of the Residence and enter his vehicle.  At that time, law enforcement officers

executed the search warrant and Deeren, Miles, and Grandberry were taken into custody.  The CS was also brought into the Residence and treated as a defendant to secure their identity (Filing No. 167 at 2).  The CS's recording device was terminated before the CS was brought into the residence. *Id*.  Deeren, Miles, and Grandberry were issued *Miranda* warnings.  The Government asserts that the CS also was read their *Miranda* rights, but Miles disputes this.

Law enforcement officers ordered the CS, Deeren, Miles, and Grandberry to empty their pockets.  Deeren had the $1,200.00 OAF and a cell phone in his pocket; Grandberry had $5,786.00 and three cell phones; and Miles had a cell phone.  The CS claimed ownership of the money and admitted to having a syringe in her purse.[1]  The law enforcement officers then searched the Residence.  The Government asserts that the CS and the other in-custody individuals were outside the Residence during the search.  In his Motion, Miles asserts that all four individuals were still present inside the Residence and observed the search.  Miles allegedly made a post-*Miranda* statement stating that he was the sole occupant of the Residence.  (Filing No. 2 at 8.)  During the search of the Residence, officer recovered Methamphetamine, Cocaine, MDMA, drug paraphernalia, and rifles.

On December 3, 2019, a federal grand jury returned a Superseding Indictment, charging Miles with one count of Possession with Intent to Distribute Methamphetamine, one count of Possession with Intent to Distribute Cocaine, and two counts of Felon in Possession of a Firearm (Filing No. 65).  Miles requested that the Government disclose the CS's identity and all information related to the CS.  The Government responded that, because the CS is not being called as a witness by the Government, it would not be providing the requested information.  On February 4, 2022, Miles filed the instant Motion.  (Filing No. 159.)

---

[1] The Government asserts that the CS did not make a statement claiming ownership of the $1,200.00 OAF.

## II.   <u>LEGAL STANDARD</u>

The Government has been recognized to enjoy the "privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement." *Id.* "The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id.*

However, the United States Supreme Court has explained, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60–61. The trial court should balance the public interest in protecting the flow of information and the identity of the informant against the need for disclosure in order to prepare an adequate defense. *Id.* at 62. Factors to consider are "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* A defendant can overcome the confidential informant privilege by demonstrating a need for the information because it is either "relevant and helpful" to his defense or "essential to a fair determination of a cause." *United States v. Jefferson*, 252 F.3d 937, 941 (7th Cir. 2001) (quoting *Roviaro*, 353 U.S. at 60–61).

Disclosure generally will not be required when the confidential informant is a mere "tipster"—someone whose only role was to provide the police with the relevant information that served as the foundation for obtaining the search warrant—rather than a "transactional witness"

who participated in the crime charged against the defendant or witnessed the event in question.  *Id.*

at 941–42.

### III.   DISCUSSION

In his Motion, Miles asks the Court for "an order compelling the government to disclose

the identity and location of all confidential informants and witnesses relied upon or otherwise

employed by the government or any of its agents in the investigation and prosecution of Miles."

(Filing No. 159 at 1.)  The Court **denies** the broad request, because an informant's identity, or the

contents of his/her communication, is discoverable only when it is shown to be relevant and helpful

to the defense of an accused, or is essential to a fair determination of a cause.  Miles has not shown

that disclosure of all confidential informants and witnesses involved in the investigation is relevant

or discoverable.

With respect to the CS identified as being present on May 1, 2019, Miles argues that CS's

presence inside the Residence throughout the execution of the search warrant makes her a

transactional witness and requires the disclosure of her identity and other relevant information

regarding her involvement with the case.  Miles contends,

> As a witness to the search, the CS will be able to provide relevant information for
> the preparation of Mr. Mile's [sic] defense. The CS will be able to identify who was
> in the Residence at the time of the execution of the search warrant and the location
> of each individual during the search. She will be able to rebut or confirm alleged-
> post arrest statements during the search. The CS can provide testimony regarding
> her source of supply; ownership and/or possession of the Residence; her
> relationship with Mr. Miles; conversations with Deeren regarding his source of
> supply during travel to the Residence; and provide eyewitness testimony to the
> execution of the search, including which rooms were searched, where certain
> contraband was seized, and which law enforcement officers were involved in the
> search.

(Filing No. 159 at 5.)

Miles further contends,

The CS was also fitted with an audio and visual recording device—a device that would contain statements and conversations heard by the CS, which may not have been heard by law enforcement during the search of the Residence. The device would also capture law enforcement conversations with all seized parties and provide details about the search of the Residence. The CS also claimed ownership of the money that was recovered during the search. This statement is potentially exculpatory for Mr. Miles. Audio from the device may rebut law enforcement reports regarding where contraband was located. The audio would also reveal any conversation between Deeren and the CS regarding source of supply, reason for traveling to the Residence, and the true purpose for sending the CS into the gas station prior to traveling to the Residence.

*Id.* at 5–6.

Miles argues that the CS's presence inside the Residence during the execution of the warrant and subsequent search makes the CS a "transactional witness," not merely a "tipster." He contends the CS's presence inside the Residence when the warrant was executed, when the search was conducted, and when any post-arrest statements were made by Miles is relevant and helpful to Miles' defense, and the privilege must give way to ensure Miles' rights are preserved. Without disclosure, he contends he will not be able to prepare an adequate defense because he will be lacking material witness testimony that could be exculpatory, and this testimony could be paramount to his defense.

The Government responds that the specific CS was utilized to purchase controlled substances from Deeren and never interacted with Miles during any controlled purchase. Moreover, the CS has no independent information relating to Miles' role in the distribution of drugs. Despite Miles' contentions concerning the recording device, the Government contends –and Officer Jones affirms in his Affidavit–that the CS's recording device was terminated before the CS was brought into the Residence. Thus, the alleged recording Miles demands disclosure of does not exist and no recording device was active at any time during execution of the search warrant. The Government contends that all individuals were given their *Miranda* rights and read

the search warrant.  Officer Jones asked who lived at the house and who owned which vehicle.

Miles stated that he lived at the Residence and identified which vehicle he owned, and Grandberry

identified his vehicle.  The $1,200.00 OAF provided to the CS earlier that day was recovered from

Deeren.  Law enforcement officers maintained custody over the individuals, but they were held

outside while other law enforcement officers searched the Residence.

The Government states that it will not be introducing testimony by the CS in its case-in-

chief.  The CS had no direct interaction with Miles during the pendency of the case aside from

their mere presence in the vicinity when law enforcement officers executed the search warrant.

The Government explains that the alleged controlled purchase of drugs from Miles is not the

subject of any of the charges in the Superseding Indictment in this case, and the CS never interacted

with Miles during any controlled purchase.  The Government argues that Miles makes a number

of speculative claims as to what he believes the CS would testify to, including requests for the CS

to provide hearsay evidence.  Contrary to Miles' assertions in his Motion, the CS was not present

in the Residence during the execution of the search warrant and cannot provide information as to

who was in the Residence and the location of each individual.  The Government argues that Miles'

speculative assertions of what the CS could testify about are irrelevant and are hearsay.  Because

the disclosure of the confidential information is not "relevant" as required by Federal Rule of

Criminal Procedure 16(a)(1)(B)(i), the statements made by the CS bear no weight on the

Government's case-in-chief, the facts and circumstances related to each charge in the Superseding

Indictment, or any witnesses that will be called during trial, the Government argues the CS cannot

testify and need not be identified.

The Court determines that a hearing is necessary before it can rule on the request to compel

disclosure of the CS's identity.  This decision is based on the parties' conflicting versions of the

facts regarding the CS being read their *Miranda* rights, the CS claiming ownership of the $1,200.00 OAF, the CS and other individuals being present inside the Residence while it was being searched, and the CS's audio/video recording equipment running while the search was ongoing.  The parties should be prepared for a hearing on this issue at the final pretrial conference.

## IV.   CONCLUSION

For the reasons discussed above, the Motion to Compel Disclosure of Cooperating Source Identity and Location (Filing No. 159) is **DENIED in part and TAKEN UNDER ADVISEMENT in part**.  The Court **denies** Miles' broad request for disclosure of all confidential informants and witnesses relied upon or otherwise employed by the Government or any of its agents in the investigation and prosecution of Miles.  The Court concludes that a hearing is warranted to determine whether disclosure of the identity of the CS present on May 1, 2019 is appropriate.  Miles' Motion to Compel disclosure of this person is **taken under advisement**, and the parties should be prepared to discuss this further at the final pretrial conference.

**SO ORDERED.**

Date:  2/16/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Finis Tatum, IV
TATUM LAW GROUP, LLC
ftatum@tlgindy.com

Pamela S. Domash
UNITED STATES ATTORNEY'S OFFICE
pamela.domash@usdoj.gov