**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cr-00183-TWP-DML-1 |
| | ) | |
| ARTHUR MILES, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION TO COMPEL**

This matter is before the Court on Defendant Arthur Miles' ("Miles") Motion to Compel Disclosure of Cooperating Source Identity and Location ([Filing No. 159](#)). The Government filed its Response in opposition to the Motion ([Filing No. 167](#)), and Miles filed his Reply brief ([Filing No. 174](#)). Miles asks the Court to compel the Government to "disclose the identity and location of all confidential informants and witnesses relied upon or otherwise employed by the government or any of its agents in the investigation and prosecution of Miles." ([Filing No. 159 at 1](#).) The Court previously denied Miles' Motion to the extent it seeks the disclosure of the identity and location of "all" confidential informants and witnesses relied upon or otherwise employed by the Government or any of its agents in the investigation and prosecution of Miles ([Filing No. 177](#)).[1] The Motion was taken under advisement as to the cooperating source ("CS") who was present on May 1, 2019. During the final pretrial conference, the Court held an evidentiary hearing regarding the Motion to Compel the disclosure of the identity of the CS. For the following reasons, the Motion is **denied**.

---

[1] The Court incorporates herein by reference the background section of its previous Entry on Defendant's Motion to Compel at [Filing No. 177 at 2](#)–3.

## I.   <u>LEGAL STANDARD</u>

The Government has been recognized to enjoy the "privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957).  "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement." *Id.* "The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation. " *Id.*

However, the United States Supreme Court has explained, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60–61.  The trial court should balance the public interest in protecting the flow of information and the identity of the informant against the need for disclosure in order to prepare an adequate defense.  *Id.* at 62.  Factors to consider are "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.*   A defendant can overcome the confidential informant privilege by demonstrating a need for the information because it is either "relevant and helpful" to his defense or "essential to a fair determination of a cause." *United States v. Jefferson*, 252 F.3d 937, 941 (7th Cir. 2001) (quoting *Roviaro*, 353 U.S. at 60–61).

Disclosure generally will not be required when the confidential informant is a mere "tipster"—someone whose only role was to provide the police with the relevant information that served as the foundation for obtaining the search warrant—rather than a "transactional witness"

who participated in the crime charged against the defendant or witnessed the event in question. *Id.* at 941–42.

## II.   **DISCUSSION**

The Superseding Indictment charges Miles with Count 1: Possession with Intent to Distribute Methamphetamine, Count 2: Possession with Intent to Distribute Cocaine, and Counts 3 and 4: Felon in Possession of a Firearm (Filing No. 65).   Miles asks the Court to compel the Government to disclose the identity of the CS and their involvement in this case.   The superseding Indictment alleges that on May 1, 2019 Miles possessed with intent to distribute marijuana and cocaine. Miles contends,

> As a witness to the search, the CS will be able to provide relevant information for the preparation of Mr. Mile's [sic] defense. The CS will be able to identify who was in the Residence at the time of the execution of the search warrant and the location of each individual during the search. She will be able to rebut or confirm alleged-post arrest statements during the search. The CS can provide testimony regarding her source of supply; ownership and/or possession of the Residence; her relationship with Mr. Miles; conversations with Deeren regarding his source of supply during travel to the Residence; and provide eyewitness testimony to the execution of the search, including which rooms were searched, where certain contraband was seized, and which law enforcement officers were involved in the search.

(Filing No. 159 at 5.)

> Miles further contends in his written Motion,

> The CS was also fitted with an audio and visual recording device—a device that would contain statements and conversations heard by the CS, which may not have been heard by law enforcement during the search of the Residence. The device would also capture law enforcement conversations with all seized parties and provide details about the search of the Residence. The CS also claimed ownership of the money that was recovered during the search. This statement is potentially exculpatory for Mr. Miles. Audio from the device may rebut law enforcement reports regarding where contraband was located. The audio would also reveal any conversation between Deeren and the CS regarding source of supply, reason for traveling to the Residence, and the true purpose for sending the CS into the gas station prior to traveling to the Residence.

*Id.* at 5–6.

Miles argues that because the CS was present inside the Residence during the execution of the warrant and subsequent search, that makes the CS a "transactional witness," and not merely a "tipster" and requires the disclosure of their identity and other relevant information regarding their involvement with the case. He argues the CS's presence inside the Residence when the warrant was executed, when the search was conducted, and when any post-arrest statements were made by Miles is relevant and helpful to Miles' defense, and the privilege must give way to ensure Miles' rights are preserved. Miles concludes that without disclosure, he will not be able to prepare an adequate defense because he will be lacking material witness testimony that could be exculpatory, and this testimony could be paramount to his defense.

The Government responds that the specific CS was utilized to purchase controlled substances from Deeren and never interacted with Miles during any controlled purchase. Moreover, the CS has no independent information relating to Miles' role in the distribution of drugs. Despite Miles' contentions concerning the recording device, the Government contends— and Drug Enforcement Administration Task Force Officer Clifton Jones ("TFO Jones") affirms in his affidavit—that the CS's recording device was terminated before the CS was brought into the Residence. Thus, the alleged recording Miles demands disclosure of does not exist, and no recording device was active at any time during execution of the search warrant.

The Government states that it will not be introducing testimony by the CS in its case-in-chief. Moreover, the alleged controlled purchase of drugs from Miles is not the subject of any of the charges in the Superseding Indictment in this case, and the CS never interacted with Miles during any controlled purchase. The Government argues that Miles makes a number of speculative claims as to what he believes the CS would testify to, including requests for the CS to provide

hearsay evidence.  Contrary to Miles' assertions in his Motion, the CS was not present in the Residence during the execution of the search warrant and cannot provide information as to who was in the Residence and the location of each individual.  The Government argues that Miles' speculative assertions of what the CS could testify about are irrelevant and are hearsay.  Because the disclosure of the CS is not "relevant" as required by Federal Rule of Criminal Procedure 16(a)(1)(B)(i), the statements made by the CS bear no weight on the Government's case-in-chief, the facts and circumstances related to each charge in the Superseding Indictment, or any witnesses that will be called during trial, the Government argues the CS cannot testify and need not be identified.

> In its prior Order, the Court noted that a hearing was necessary
>
> based on the parties' conflicting versions of the facts regarding the CS being read their *Miranda* rights, the CS claiming ownership of the $1,200.00 OAF, the CS and other individuals being present inside the Residence while it was being searched, and the CS's audio/video recording equipment running while the search was ongoing.

(Filing No. 177 at 7–8.)

During the hearing, the Government made a proffer of evidence concerning TFO Jones' interview of the CS.  Thereafter, defense counsel cross-examined TFO Jones after he was placed under oath, and the Government asked redirect questions of TFO Jones.  The evidence before the Court is that the CS was interviewed by TFO Jones on February 16, 2022, regarding the execution of the search warrant at the Residence on May 1, 2019.  The CS indicated remembering being given *Miranda* warnings with the other individuals involved.  The CS stated that they, along with the other individuals involved, were inside the Residence when *Miranda* warnings were given. When asked if they made any statement about ownership of the $1,200.00 OAF, the CS responded that they did not remember making any statement about the money.  TFO Jones asked the CS if

they remembered being inside the Residence during the search of the Residence, and the CS responded that they were taken outside the Residence and sat on the ground while the Residence was searched.  The CS also confirmed that the audio recording device was removed from them before they were taken inside the Residence.  TFO Jones asked the CS if they remembered any statements made by the other individuals involved, and the CS responded that the only statement they remembered was from "the black male with dreads [Grandberry] saying he didn't even live there." That statement was made while the CS and the other individuals involved were outside the Residence.  The CS did not recall whether other statements were made.

The Court considers the following facts to be determinative in resolving this Motion.  The Government does not intend to call the CS to testify during its case-in-chief.  The CS is not an active confidential informant for the Government.  The CS was used to purchase drugs from Deeren and never interacted with Miles during controlled purchases.  Miles, Grandberry, and Deeren were arrested and taken into the Residence while the CS was still in the car.  The CS's recording device was terminated before the CS was brought into the Residence.  The CS was then taken into the Residence, and *Miranda* warnings were given to the CS, Miles, Grandberry, and Deeren.  The search of the Residence did not occur until after the CS, Miles, Grandberry, and Deeren were taken back outside, so the CS did not witness the search being conducted.  The CS recalled Grandberry making a statement while outside the Residence, but the CS could not recall whether any other statements were made.  The CS could not recall making a statement about ownership of the $1,200.00 OAF.  The events took place nearly three years ago, so it is reasonable that the CS would not remember every detail.

The Court concludes that Miles has not overcome the confidential informant privilege by demonstrating a need for the information because it is either relevant and helpful to his defense or

essential to a fair determination of the cause. Miles cannot call the CS as a witness to address his alleged statement because such would be inadmissible hearsay. The CS does not remember information about many of the alleged facts raised by Miles, and the CS was not present inside the Residence when it was searched. Some of the issues raised by Miles—such as whether the CS claimed ownership of the $1,200.00 OAF found on Deeren (about which the CS could not recall making a statement)—are not relevant to the charges in the Superseding Indictment. Furthermore, there is no evidence that the CS witnessed the commission of the crimes charged in the Superseding Indictment. Because of these facts, any significance of the CS's possible testimony is minimal at best. The public interest in protecting the flow of information, and especially protecting the CS, outweighs any interests raised by Miles. Miles has not overcome the privilege.

### III.   CONCLUSION

For the reasons discussed above, the Court **DENIES** Miles' Motion to Compel Disclosure of Cooperating Source Identity and Location (Filing No. 159).

**SO ORDERED.**

Date:  2/28/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Pamela S. Domash
UNITED STATES ATTORNEY'S OFFICE
pamela.domash@usdoj.gov

Peter A. Blackett
UNITED STATES ATTORNEY'S OFFICE
peter.blackett@usdoj.gov

Finis Tatum, IV
TATUM LAW GROUP, LLC
ftatum@tlgindy.com