UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cr-00183-TWP-DML |
| ) | |
| ARTHUR MILES, ) | -01 |
| ) | |
| Defendant. ) | |

**ORDER DENYING DEFENDANT'S SECOND MOTION TO SUPPRESS**

This matter is before the Court on Defendant Arthur Miles' ("Miles") second Motion to Quash Search Warrant and Suppress Evidence (Filing No. 158).  Miles is charged by Superseding Indictment with Count 1: Possession with Intent to Distribute Methamphetamine; Count 2: Possession with Intent to Distribute Cocaine; and Counts 3 and 4: Felon in Possession of a Firearm (Filing No. 65).  He asks the Court to quash the search warrant issued for the premises located on Brouse Avenue in Indianapolis, Indiana (the "Residence") and suppress all evidence recovered pursuant to that warrant, including items seized from his vehicle located on the premises.  Pursuant to Federal Rule of Criminal Procedure 12(d), the Court issues its findings of fact and conclusions of law and **denies** the Motion to Suppress.

**I.  FINDINGS OF FACT**

The relevant facts are not disputed, so no hearing is necessary.  On May 6, 2021, Miles filed a similar Motion to Quash Search Warrant and Suppress Evidence based on lack of probable cause for the search warrant (Filing No. 131).  The Court denied the motion (Filing No. 142).  The Court adopts the findings of fact from its previous Order and recites additional findings relevant to this second suppression motion.

Law enforcement officers received a tip from a cooperating source ("CS") alleging he could obtain methamphetamine from Christopher Deeren ("Deeren") (Filing No. 131 at 2). Officers used the CS to conduct two controlled buys from Deeren. During each purchase, control measures were used. Prior to each purchase an undercover officer's vehicle was searched and the CS was searched to ensure that the CS possessed no contraband other than that provided by Deeren. (Filing No. 131-1 at 13.) The CS was fitted with audio and video recording equipment prior to each controlled purchase so that law enforcement could listen to and view the transaction. *Id*. Law enforcement officers also physically observed the undercover officer drive the CS directly to and from the Residence for both purchases to assure that the CS did not meet with other persons. *Id*. at 13-14. During the controlled buys, the CS would meet Deeren at a specified location, and then Deeren would take the CS to the Residence. (Filing No. 131 at 2–3.) During these controlled buys, a third unidentified individual was also present. *Id*. On each occasion, when the CS and Deeren arrived at the Residence, Deeren would enter the Residence, and return to the vehicle with illegal drugs for the CS. *Id*. at 3. On one controlled buy Deeren was observed as a passenger in a gold Chevy Blazer, and during another buy, Deeren was driving a red Ford Escape.

On April 29, 2019, following the second controlled buy, Drug Enforcement Agency Task Force Officer Clifton S. Jones ("TFO Jones") filed an application for a search warrant for the Residence (Filing No. 131 at 3). TFO Jones requested to search "[t]he property and premises located in between 3249 and 3239 Brouse Ave. (believed to [be] 3243 Brouse Ave. Indianapolis, IN 46218), together with any unattached out buildings and any vehicles on said premises, more fully described in Attachment A". (Filing No. 131-1.) Attachment A is a photograph of the Residence with a description of the Residence which includes that the house is red brick with white awnings, a brown colored shingled roof and no numbers were visible on the Residence to identify the specific address.

*Id* at 21-22. Exhibit A also depicts at least one vehicle in the driveway. The Magistrate Judge signed the search warrant which authorized executing officers to search "any" vehicles on the premises.

Law enforcement set up a third and final controlled buy to encourage Deeren to travel to the Residence (Filing No. 135 at 5). The CS met with Deeren at a gas station, and the two drove together to the Residence. *Id*. Upon arriving at the Residence, Deeren exited the red Ford Escape and met with Cleo Brandberry ("Brandberry") and Miles on the front porch. *Id*. Deeren, Miles, and Brandberry were taken into custody, and the search warrant was executed. *Id*. Upon execution of the search warrant, documents identifying Miles were found within the Residence. *Id*. At the Residence, law enforcement also found a DVR connected to surveillance cameras, methamphetamine, over 100 grams of cocaine, a scale, $10,000.00, a kilo press, and rifles. *Id*.

A silver Honda Odyssey van ("the Honda") was parked in the driveway. After Deeren, Miles, and Brandberry were taken into custody, Indianapolis Metropolitan Police Department ("IMPD") Detective Keith Hartman and his K-9 partner conducted an open-air sniff of the three vehicles parked at the Residence, including the Honda. The K-9 alerted and IMPD Detective Gibson searched the Honda and located a black Air Jordan backpack containing six (6) individually vacuum sealed bags of MDMA tablets and a black canister containing cocaine. Contraband was not located in the other vehicles. Miles made a post-*Miranda* statement stating that he was the sole occupant of the Residence and the silver Honda Van belonged to him (Filing No. 2 at 8).

## II.  CONCLUSIONS OF LAW AND ORDER

In this second Motion to Suppress, Miles argues,

> The search warrant did not describe with particularity the place to be searched, causing the resulting search to violate the Fourth Amendment of the United States Constitution. The search warrant failed to provide any description of which vehicles to be seized, but merely authorized executing officers to search "any and all" [sic] vehicles on the premises.

3

(Filing No. 158 at 4.) He contends that at the very least, the request to search the vehicles should have been particularized to reflect vehicles that were associated with the illegal activity or persons described in the warrant application. *Id*. at 5. Miles argues the way the warrant was written, vehicles allowed to be searched would include someone at the residence performing maintenance; a delivery person (Amazon, Fed Ex, UPS, USPS) or an unlucky individual attempting to start an inoperable vehicle. *Id*. Because the language in the search warrant allowed law enforcement to search any vehicles on the premises, Miles argues the search of the vehicles should be quashed and any contraband recovered should be excluded. *Id*.

In response, the Government first asserts that the verbiage of the warrant is sufficient. The Government then argues that law enforcement did not rely on the warrant to search vehicles on the premises. Rather, the officers utilized a K9 to conduct a free air sniff. After the K9 alerted at the Honda located on the property, it was then searched. *Relying on City of Indianapolis v. Edmond*, 531 U.S. 32 (2000) (walking narcotics detecting dog around car exterior does not constitute a search), the Government argues that law enforcement had probable cause to search the vehicle after the K9 alerted. The Government also asserts that the good faith exception applies. (Filing No. 166 at 2, 3.)

In his Reply, Miles reiterates that the search warrant failed to provide any description of which vehicles were to be seized, but merely authorized executing officers to search "any and all" [sic] vehicles on the premises. He rejects the Government's assertion that law enforcement utilizing a K9 to conduct a free air sniff is sufficient to establish probable cause to search the vehicle. (Filing No. 173 at 5.) Therefore, probable cause resulting from the dog sniff could not exist to search the Honda in this case because it was located in the driveway of the Residence.

A valid search warrant requires (1) an independent magistrate issuing it; (2) a showing of probable cause that the evidence sought will aid in a particular apprehension or conviction for a particular offense; and (3) a particular description of the things to be seized, as well as the place to be searched." *United States v. Gibson*, 996 F.3d 451, 460 (7th Cir. 2021). Moreover, a warrant may be thought "too general" only if some more-specific alternative would have done better at protecting privacy while still permitting legitimate investigation. *United States v. Bishop*, 910 F.3d 335, 337 (7th Cir. 2018). As noted by Miles, the United States Supreme Court does not demand exact precision in a search warrant's description of the targeted premises. Instead, it has found the particularity requirement to be satisfied if the warrant's descriptions "is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503 (1925); *United States v. Kelly*, 772 F.3d 1072, 1081 (7th Cir. 2014).

With respect to the search of the premises, the Court previously determined that the search warrant's description of the targeted premises—the property and premises located between 3249 and 3239 Brouse Avenue (believed to be 3243 Brouse Avenue)—clearly satisfies the particularity requirement because this description "is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended." *See Kelly* at 1081. The warrant provided the location of both residences on either side of the target premises, the believed address of the target premises, as well as a photograph of the target premises and a description which included the color of the bricks, awnings and roof. This description clearly provides sufficient particularity of the premises to allow an officer with reasonable effort to ascertain and identify the place intended be searched.

The Court determines that the search warrant provided probable cause to search the vehicle when it described that any vehicle on the premises could be searched. The focus of Miles' argument in this motion is that the warrant failed to describe vehicles on the premises with sufficient particularity. The Fourth Amendment requires that a warrant "particularly describ[e] the ... things to be seized." This requirement precludes the issuance of a warrant that permits a "general, exploratory rummaging in a person's belongings," *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971), and thereby ensures that the scope of a search will be confined to evidence relating to a specific crime that is supported by probable cause. *See United States v. Leary,* 846 F.2d 592, 600 (10th Cir.1988). To satisfy the demand for particularity, a warrant "must describe the objects of the search with reasonable specificity, but need not be elaborately detailed." *United States v. Shoffner,* 826 F.2d 619, 630 (7th Cir.1987) (quoting *United States v. Reed,* 726 F.2d 339, 342 (7th Cir.1984)).

Under the circumstances here, a more particularized description of the vehicles is not required. In his affidavit for the search warrant, TFO Jones described that Deeren--the focus of the search warrant--was seen driving or riding in two separate vehicles, and a third vehicle is described as being involved in Deeren's drug activities.[1] The warrant affidavit, "need only contain facts that, given the nature of the evidence sought and the crime alleged, allow for a reasonable inference that there is a fair probability that evidence will be found in a particular place." *United States v. Yarber*, 915 F.3d 1103, 1105 (7th Cir. 2019). Relying on the affidavit, the Magistrate Judge reasonably determined that probable cause existed to allow a search of any vehicles on the premises. The scope of a search of any vehicle on the premises is reasonably confined to evidence

---

[1] "The red Ford Escape stopped at 30th St. and Keystone Ave. A white male exited the rear of the vehicle and entered into a gold Chrysler 300. The red Ford Escape left and proceeded south bound on Keystone Ave." (Filing No. 131-1 at 17 ¶ 30.)

relating to a specific crime—Deeren's possession with intent to distribute controlled substances, and conspiracy to distribute controlled substances, after visiting the Residence. While the part of the warrant concerning "any vehicles" may be broad, the Court finds it is not impermissibly so.

The Court also finds probable cause to search the Honda resulting from the dog sniff. Miles relies on the recent United States Supreme Court decision in *Collins v. Virginia*, 138 S. Ct. 1663 (2018), which held that the automobile exception does not permit the warrantless entry of a home or its curtilage in order to search a vehicle therein. In *Collins*, the court stated "when an officer physically intrudes on the curtilage to gather evidence, a Fourth Amendment search has occurred and is presumptively unreasonable absent a warrant." *Id*. at 1666. The circumstances here are distinct from *Collins* because officers had a valid search warrant which described the property to be searched as the Residence, "together with any unattached out buildings and any vehicles on said premises." Unlike the officers in *Collins* who had no warrant when they entered his property, the officers' presence on Miles' curtilage (to gather evidence) was not a Fourth Amendment violation.

Miles does not challenge the reliability of the sniff, and does not dispute that the K9 alerted to the silver Honda. The alert provides probable cause to search a suspect's vehicle. The case law is replete with such holdings. *See, e.g., U.S. v. Martin,* 422 F.3d 597 (7th Cir.2005) (free air sniff by drug detection canine provided probable cause for search); *United States v. Hernandez,* 24 F.App'x 560, 562 (7th Cir.2005) (unpublished) ("dog's alert alone supplies probable cause that drugs are present"); *United States v. Rogers,* 387 F.3d 925 (7th Cir. 2004) (reasonable suspicion elevated to probable cause once drug detecting canine alerted). As argued by the Government, the officers did not just rely on the search warrant for probable cause to search the Honda, they first secured the assistance of a K9. After the K9 alerted at the Honda, law enforcement had probable cause to search the vehicle.

Finally, the Government argues that even if the warrant to search any vehicle was invalid, the good faith exception applies. The good faith exception provides that the exclusionary rule does not apply where police officers reasonably and in good faith believe that their conduct is lawful. *United States v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Under this exception, the fruits of a search based on an invalid warrant may be admitted if the officers who executed the search relied upon the warrant in good faith. *See United States v. Orozco*, 576 F.3d 745, 750 (7th Cir. 2009). Here, the officers who executed the search had a reasonably good faith belief that a search of "any vehicles on said premises" was in accord with the Fourth Amendment. The officers in good faith believed they had a valid search warrant based on their controlled buys with Deeren and the Magistrate Judge's determination that any vehicle on the premises could be searched. The Court finds that "the warrant on the whole was not so deficient in establishing probable cause as to preclude reasonable, good-faith reliance on it by the police." *Yarber*, 915 F.3d at 1106; *see also Leon*, 468 U.S. at 899. So even if the warrant provision to search any vehicle were invalid, the good faith exception would apply.

### III.   CONCLUSION

For the reasons explained above, the Court **DENIES** Miles' second Motion to Quash Search Warrant and Suppress Evidence ([Filing No. 158](#)).

**SO ORDERED.**

Date:   4/7/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Finis Tatum, IV
TATUM LAW GROUP, LLC
ftatum@tlgindy.com

Pamela S. Domash
UNITED STATES ATTORNEY'S OFFICE
pamela.domash@usdoj.gov

Peter A. Blackett
UNITED STATES ATTORNEY'S OFFICE
peter.blackett@usdoj.gov